

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

December 9, 1958

Honorable William A. Harrison
Commissioner of Insurance
State Board of Insurance
Austin 14, Texas

Opinion No. WW-532

Re: Can a county mutual insurance
company qualify to write cas-
ualty lines of insurance and if
so, what requirements must it
meet to so qualify? What re-
quirements must it meet to
write all lines of automobile
insurance?

Dear Sir:

Your questions in your letter of request for an opinion are as follows:

"(1) Does Article 17.25, Section 1, Texas Insurance Code, require a county mutual insurance company to qualify to write casualty lines of insurance before it can write all lines of automobile insurance? If your answer is in the negative, what does the language 'qualifying to write casualty lines' mean?

"(2) If your answer to the above question is in the affirmative, what statutory authority, if any, exists for a county mutual insurance company to write casualty lines of insurance? If there is no such statutory authority, can a county mutual write casualty lines of insurance?

"(3) If your answer to the first question is in the affirmative, and you have determined that a county mutual can write casualty lines of insurance, what requirements must be met by a county mutual insurance company to qualify to write casualty lines, and thereby write all lines of automobile insurance?

"(4) If your answer to the first question is in the negative, what requirements must be met by a county mutual insurance company to qualify to write all lines of automobile insurance?"

The county mutual type company was first authorized by the Acts of 1937, 45th Legislature, Chapter 99. This Act was enumerated as Article 4860a-20 by Vernon's and the essence of this Act was later incorporated into the provisions of Articles 17.01 to 17.24 of the Texas Insurance Code of 1951. Additional extensive regulations of county mutuals were provided

in the passage of the Acts of 1947, 50th Leg., p. 739, ch. 367. This Act was designated as Sections la and 2a of Article 4860a-20. The essence of this Act was carried forward into the 1951 Insurance Code as Article 17.25. Thus, after 1951 the principal provisions pertaining to county mutuals were contained in Chapter 17 of the Texas Insurance Code. In 1953 extensive amendments were made to Chapter 17 and again in 1955 not only were extensive amendments again made to Chapter 17 but it was also provided that no further county mutuals could be formed under Chapter 17. Article 17.02 as amended, Acts 1955, 54th Leg., p. 413, ch. 117, Sec. 31 (which Act will hereinafter be referred to as S.B. 15).

Each of these amendments to the county mutual plan of operation provided successively more stringent requirements so that while in the beginning it required very little, if any, capital to start a county mutual today the financial requirements for county mutuals are in many respects comparable to those for capital stock companies.

When first permitted by law county mutuals could only write insurance against the hazards of fire, lightning, gas explosion, theft, windstorm and hail on the five categories of risks enumerated in Article 17.01, Texas Insurance Code. To commence business there was practically no capital requirement as such. One dollar for each $100.00 of insurance applied for at the time of incorporation and in addition thereto a like amount of written valid extra premium or assessment obligations would suffice for capital. (Sec. 5 of Art. 4860a-20 and Art. 17.05 of the Ins. Code prior to 1953 amendments) It was further provided that the contingent liability of policyholders for assessment should be considered and listed as a part of the assets of the company. (Art. 4860a-20(6) and Art. 17.06 prior to amendment in 1953).

A county mutual was considered solvent so long as its assets, including the contingent liability of its policyholders, were sufficient to pay the losses. (Art. 4860a-20(10) and Art. 17.11 prior to amendment in 1953). With this provision in the law it was practically impossible to declare a county mutual insolvent until it had absolutely exhausted its last dime since the total figure for contingent liability was almost always sufficient to equal the losses although as a matter of fact the contingent liability was of dubious collectible value to say the least.

Section 15 of Article 4860a-20 provided:

"Sec. 15. Location of business. A County Mutual Insurance Company may write insurance (a) in any County adjoining the County in and for which it is organized, or (b) in any County in which no County Mutual Insurance Company has been organized, or (c) anywhere, if its reserve fund, or policyholders contingent liability, or both such reserve fund and contingent liability taken together, exceeds the sum of Fifty Thousant ($50,000.00) Dollars."

This section was carried into the Insurance Code of 1951 as Article 17.16.

The amendment of 1947 in effect modified the provisions of Section 1 of Article 4860a-20 (Art. 17.01) and Section 1a of this amendment provided that county mutuals would be authorized "to write insurance against loss or damage from any hazard provided therein (Art. 4860a-20 (1) and Art. 17.01) or that any other fire or windstorm insurance company operating in Texas may write on property described in Section 1 of Article 4860a-20". The 1947 Act also increased the financial requirements of such a company by requiring such companies to make a deposit equal to the largest amount assumed on any one risk (after re-insurance) and in addition, to maintain a statutory deposit equal to the previous deposit described. If the largest risk assumed was $1,000.00, this would have required an additional $2,000.00 in deposits regardless of how many such policies were issued.

This provision permitted county mutuals to write insurance against all of the hazards described in Article 6.03 of the Texas Insurance Code on the types of property enumerated in Section 1 of Article 4860a-20 (Art. 17.01). This would entail loss or damage by fire as those terms have been applied to fire insurance companies and with reference to automobiles "to insure automobiles or other motor vehicles. . .against all or any of the risks of fire, lightning, windstorms, hail storms, tornadoes, cyclones, explosions, transportation by land or water, theft and collisions". (Art. 6.03, Tex. Ins. Code).

So at the passage of the Insurance Code in 1951 a county mutual insurance company could not write liability insurance on automobiles and it could only insure certain types of automobiles described in Article 17.01.

In 1953 Article 17.05 was amended so as to add a new Section (c). This increased the financial requirements by requiring $10,000.00 in free surplus if the company was organized to write business locally in the county of its domicile and in the adjoining counties and if it was organized to write insurance in any county within the State $25,000.00 in surplus. Article 17.11 was completely amended so that county mutuals were required to maintain the solvency level previously described in Article 17.05. Corresponding changes were made in Article 17.16 regulating the place of business. No modification was made in the hazards or risks which a county mutual could insure.

In 1955, as mentioned before, extensive amendments were made to the provisions of Chapter 17 of the Insurance Code by Acts 1955, 54th Leg., p. 413, ch. 117, also known as Senate Bill 15. This Act provided extensive amendments to the Insurance Code, particularly raising the financial requirements for insurance companies other than life. Article 17.11 was amended as follows:

"Art. 17.11. Financial Requirements and Impairment of Surplus. County mutual insurance companies shall maintain at all times unearned premium reserves as provided in

Article 6.01 of this Code. The unearned premium reserves and any other type of reserves authorized by the Board of Directors shall be invested in such securities as the reserve funds of other insurance companies doing the same kind of business are by law required to be invested.

"There shall be maintained at all times free surplus invested only in items enumerated in Article 2.08 of this Code of:

"(a) Not less than $25,000.00 if the company is organized to write insurance locally in the county of its domicile only; or

"(b) Not less than $50,000.00 if the company is organized to write insurance in the county of its domicile and any adjoining counties only; or

"(c) Not less than an amount equal to the aggregate of the minium capital and minimum surplus required of a fire insurance company by Article 2.02 of this Code is such company is organized to write insurance in a county other than the county of its domicile and any adjoining counties within this State.

"Each county mutual insurance company shall be subject to the provisions of Section 5 of Article 1.10 and Article 2.20 of this Code."

Article 17.16 was similarly amended to reflect the change in the capital requirement and the places where business could be written. In addition, Section 1 of Article 17.25 of the Texas Insurance Code was amended to read as follows:

"Sec. 1. Regulation.--County mutual insurance companies operating under the provisions of this Chapter shall be authorized to write insurance against loss or damage from any hazard provided therein or that any other fire or windstorm insurance company operating in Texas may write on property described in Article 17.01 of this Chapter. County mutual insurance companies qualifying to write casualty lines for state wide operation may write all lines of automobile insurance, provided that no such company shall assume a risk on any one hazard greater than five (5%) per cent of its assets, unless such excess shall be promptly reinsured."

We believe that it is important at this point to note the nature of automobile liability insurance. Automobile liability insurance is prin-

cipally a casualty coverage. Historically, fire insurance companies operating only under a fire charter have not been able to write liability insurance on automobiles although they were authorized to write the property damage coverages on automobiles. Although this distinction between automobile liability insurance on the one hand and property damage insurance on the other exists, both are regulated under the same statutory provisions insofar as rates and policy forms are concerned. These provisions appear now as Subchapter A of Chapter 5 of the Texas Insurance Code (Articles 5.01 through 5.12). Similar regulation is provided for the casualty field by separate regulations embodied in Subchapter B of Chapter 5 of the Texas Insurance Code (Articles 5.13 through 5.24).

It is significant that in 1955 Article 17.22 was amended to describe the laws to which the county mutuals were subject and specifically referred to certain articles in Subchapter A of Chapter 5 regulating automobile insurance and certain sections of Subchapter C of Chapter 5 regulating fire insurance with no mention being made of Subchapter B regulating casualty insurance generally. Further, Article 5.13 in Subchapter B was amended in 1955, Acts 1955, 54th Leg., p. 359, ch. 76, Sec. 1, to continue in effect the language exempting companies operating under Chapter 17 from all the provisions of Subchapter B. This is persuasive of a legislative intent that county mutuals should not write general casualty lines.

Further, we think that it is crystal clear that prior to 1955 there was no provision in the law which would permit county mutuals to write general casualty lines. If they are now so empowered it must appear in the amendatory Acts of 1955. The language in question simply states that county mutuals qualifying to write casualty lines for state wide operation may write all lines of automobile insurance. There is no clear statement permitting the writing of casualty business generally, rather the only permission embraced in the above referred to sentence is the permission to write "all lines of automobile insurance", which authority the county mutuals did not have prior to 1955.

The caption of Senate Bill 15 with reference to this particular provision is:

"By amending Section 1 of Article 17.25 of the Code so as to provide that in addition to lines heretofore authorized, county mutual insurance companies by qualifying may write all lines of automobile insurance with limitations."

Under the circumstances, we interpret the intent of the Legislature in the use of the expression in question to be that if a county mutual meets the same requirements that a casualty insurance company must

2600

meet, then the county mutual may write all lines of automobile insurance, but it is not authorized to write casualty insurance generally.

We restate your first question:

"Does Article 17.25, Section 1, Texas Insurance Code, require a county mutual insurance company to qualify to write casualty lines of insurance before it can write all lines of automobile insurance? If your answer is in the negative, what does the language 'qualifying to write casualty lines' mean?"

As stated hereinbefore, prior to the passage of the Acts of 1955, county mutuals could insure automobiles as described in Article 17.01 for all the hazards which a fire insurance company could cover. The types of automobiles which could be insured are described in Sections (a) and (c) of Article 17.01 which read as follows:

"(a) On both rural and urban dwellings and attendant outhouses and yard buildings and all their contents for home and personal use--including family vehicles, musical instruments and libraries;

". . .

"(c) On all vehicles, harness, implements, tools and machinery of every kind and description used on and about farms, truck gardens, dairies, henneries or ranches;"

Thus, county mutuals could not write insurance on automobiles other than those described in Article 17.01 and could only insure such automobiles against the hazards mentioned in the first paragraph of Article 17.01 and those which a fire insurance company could cover, thus excluding liability insurance. In answer to your specific question a county mutual insurance company would not have to "qualify to write casualty lines of insurance" before it could write the coverages permitted prior to the Acts of 1955. But before it could write the additional lines of automobile insurance it would have to "qualify to write casualty lines of insurance".

Since we have not answered the first portion of this question in the negative, we do not answer the second part of this question.

Your second question is as follows:

"If your answer to the above question is in the affirmative, what statutory authority, if any, exists for a county mutual insurance company to write casualty lines of insurance?"

If there is no such statutory authority, <u>can</u> a county mutual write casualty lines of insurance?

In answer to this question we hold that a county mutual may not write casualty insurance other than "all lines of automobile insurance" if it qualifies under the terms of Section 1 of Article 17.25 as amended.

Your third question is as follows:

"If your answer to the first question is in the affirmative, and you have determined that a county mutual can write casualty lines of insurance, what requirements must be met by a county mutual insurance company to qualify to write casualty lines, and thereby write all lines of automobile insurance?"

In answer to your third question we state initially that we have not determined that a county mutual can write casualty lines of insurance other than "all lines of automobile insurance". In order to write all lines of automobile insurance county mutuals must meet the financial requirements specified in Section 4 of Article 2.02 for a casualty company of not less than $225,000.00 in surplus.

We have not attempted to ascertain what other casualty insurance laws, if any, must be complied with by a county mutual writing "all lines of automobile insurance" as we believe this matter to be beyond the scope of your request. Suffice it to say, we believe that the Legislature had in mind primarily financial requirements in using the language in question.

This results in a county mutual being able to do both a fire and a casualty business with $225,000.00 in surplus while a stock company, for example, would be required to have $200,000.00 in capital and $100,000.00 in surplus, $75,000.00 of total capital and surplus in excess of the requirement for a county mutual. On the other hand, a county mutual with $225,-000.00 in surplus would not have the privilege of writing all the coverages permitted such stock company.

Article 17.11 as amended by S.B. 15 in 1955 does not purport to key the surplus requirements of a county mutual to the "kinds of insurance" it is authorized to write but rather to the geographical areas in which it writes insurance even though paragraph "(c)" thereof requires a surplus equal to the aggregate of the minimum capital and surplus required of a fire insurance company. Similar treatment was given in Article 17.16 as amended by S.B. 15. Neither by the language in paragraph "(c)" of 17.11 nor by Article 17.16 nor by any other language in the Code is a county mutual authorized to engage in all aspects of the fire insurance business.

Hon. William A. Harrison, page 8 (WW-532)

In contrast, provisions of S.B. 12 amending the laws governing surplus requirements for reciprocals (Chapter 19), Lloyds (Chapter 18), and mutuals (Chapter 15) clearly provide such companies must be possessed "of a surplus equal to the minimum capital stock and surplus required of a stock company transacting the same kinds of business". Articles 15.06, 18.05, and 19.06.

For these reasons we believe that our answer to your third question meets the legislative intent.

Since your fourth question is predicated upon a negative answer to the first question, no answer is required.

## SUMMARY

A county mutual must have a surplus of $225,000.00 before it is authorized to write all lines of automobile insurance. It is not authorized to engage in casualty insurance generally.

Very truly yours,

WILL WILSON
Attorney General of Texas

By *Fred B. Werkenthin*
Fred B. Werkenthin
Assistant

FBW:jg

APPROVED:

OPINION COMMITTEE!

Geo. P. Blackburn, Chairman

Houghton Brownlee, Jr.
Linward Shivers

REVIEWED FOR THE ATTORNEY GENERAL
BY:
W. V. Geppert